UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

FEB 27 2017
2-27-17
Judge Gary Feinerman
United States District Court

UNITED STATES OF AMERICA

v.

DANIEL VAZQUEZ

No. 13 CR 744-1

Judge Gary Feinerman

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant DANIEL VAZQUEZ, and his attorney, SCOTT FRANKEL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2.     The superseding indictment in this case charges defendant with conspiracy to distribute narcotics, in violation of Title 21, United States Code, Section 846 (Count 1); distribution of narcotics, in violation of Title 21, United States Code, Section 841(a)(1) (Counts 2, 3, 9, and 12); unlawful use of a communication facility, in violation of Title 21, United States Code, Section 843(b) (Counts 4 through 8, and 10 through 11); possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c) (Count 13); possessing a firearm after previously having been convicted of a felony, in violation of Title 18, United States Code, Section 922(g) (Count 14); and forfeiture allegations.

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count One, which charges defendant with conspiracy to distribute and possess with intent to distribute controlled substances, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 846; and Count Thirteen, which charges defendant with possessing a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c). In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

### Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 and 13 of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a

reasonable doubt and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

      a.    With respect to Count One of the superseding indictment:

Beginning no later than in or around 2010, and continuing to in or around June 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant DANIEL VAZQUEZ, together with Anwer Shahbaz, aka "BZ," aka "Baz"; Francisco Mireles, aka "Pac," aka "P"; and Angel Perez, aka "Hellboy," aka "HB," aka "Fatboy"; did conspire with each other, and with others known and unknown, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, and a quantity of a mixture and substance containing a detectable amount of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), all in violation of Title 21, United States Code, Section 846.

Specifically, VAZQUEZ admits that he and Shahbaz began trafficking drugs together no later than 2010, when VAZQUEZ and Shahbaz agreed that Shahbaz would provide VAZQUEZ with money to buy marijuana for resale. ~~Shahbaz stored the marijuana so that VAZQUEZ would not have to do so while he was still on parole~~. VAZQUEZ and Shahbaz later began to sell cocaine. In the beginning, VAZQUEZ purchased an ounce or two of cocaine at a time and broke that down into smaller



quantities for resale. Shahbaz had a safe in his bedroom where the two men stored the marijuana, cocaine, and proceeds from these drug sales.

Mireles and Perez worked as drivers for the DTO to pick up the marijuana and cocaine supplied to the DTO, deliver the drugs to its customers, and collect the proceeds from the customers.

VAZQUEZ and Shahbaz were concerned about being robbed of their narcotics by gang members and so they frequently moved the DTO's locations for storing narcotics. VAZQUEZ knew that Shahbaz rented apartments for the DTO to use to store drugs, money, and firearms. For instance, in 2013, Shahbaz located and rented the apartment at 3130 N. Lake Shore Drive West, Apt. 1904, Chicago, Illinois.

In June 2013, when the lease on the 3130 N. Lake Shore Drive West apartment was set to expire, VAZQUEZ and Shahbaz rented another apartment at 441 West Oakdale Apartment 12E, Chicago, Illinois. The DTO members were in the process of moving their operations to the new location, and had moved several items, when they were arrested on June 20, 2013.

Shahbaz was responsible for storing the DTO's drugs and money and coordinating the delivery and payment for the marijuana and cocaine. Perez and Mireles were both responsible for picking up and delivering drugs and money, which VAZQUEZ directed them to do on a daily basis. The DTO utilized two vehicles for these deliveries, a maroon GMC Yukon and a beige Honda Odyssey, both of which were equipped with hidden trap compartments to store the drugs, money and guns

4

the DTO used to distribute and protect its product. The DTO made multiple deliveries on a daily basis over the course of its operation up until the date on which all DTO members were arrested on June 20, 2013.

The DTO received the majority of its cocaine and a significant quantity of its marijuana from supplier Eric Paskon, aka "E." The DTO's efforts included cocaine distributions of the following amounts to the following customers: an April 3, 2013, delivery of one kilogram of cocaine to Eduardo Rivera and his customer Charles James; an April 3, 2013, delivery of 500 grams of cocaine to Nicolas Franco; an April 3, 2013, delivery of 500 grams of cocaine to Neftali Freytes; and an April 15, 2013, delivery of one and a half kilograms of cocaine to customer Brandon Elsing, as well as additional distribution amounts of cocaine and marijuana to these customers as detailed in the DTO's ledgers.

VAZQUEZ acknowledges that the DTO distributed at least five kilograms of cocaine. Additionally, defendant acknowledges that the DTO obtained over $100,000 in proceeds from its drug trafficking activity and that its members acquired and possessed the following firearms to protect the drugs and money involved in the conspiracy: a loaded Lorcin Model L22, .22 caliber semi-automatic pistol with a defaced serial number; a loaded Ruger Model P95, 9 mm semi-automatic pistol, bearing serial number 31776419; a loaded Smith & Wesson, .32 caliber revolver with a defaced serial number; a loaded Davis Industries Chino .32 revolver with a defaced serial number; a loaded Smith & Wesson, .40 caliber semi-automatic pistol, bearing

serial number PDM8351; and a loaded SCCY Industry Model CPS-1, .380 caliber, bearing serial number 023568.

b.     With respect to Count Thirteen of the superseding indictment:

On or about June 20, 2013, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, DANIEL VAZQUEZ; Anwer Shahbaz, aka "BZ," aka "Baz;" Francisco Mireles, aka "Pac," aka "P;" and Angel Perez, aka "Hellboy," aka "HB," aka "Fatboy" did knowingly possess a firearm, namely: a loaded Lorcin Model L22, .22 caliber semi-automatic pistol with a defaced serial number; a loaded Ruger Model P95, 9 mm semi-automatic pistol, bearing serial number 31776419; a loaded Smith & Wesson, .32 caliber revolver with a defaced serial number; a loaded Davis Industries Chino .32 revolver with a defaced serial number; a loaded Smith & Wesson, .40 caliber semi-automatic pistol, bearing serial number PDM8351; and a loaded SCCY Industry Model CPS-1, .380 caliber, bearing serial number 023568; in furtherance of a drug trafficking crime for which defendants may be prosecuted in a court of the United States, namely, conspiracy to possess with intent to distribute and distribution of a controlled substance, in violation of Title 21, United States Code, Section 846, as charged in Count One of the superseding indictment, in violation of Title 18, United States Code, Section 924(c)(1)(A), and Title 18, United States Code, Section 2.

Specifically, VAZQUEZ, Shahbaz, Mireles and Perez possessed the firearms described in the previous paragraph to protect the drugs and money involved in the DTO's drug activity.

## Maximum Statutory Penalties

7. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a. Count One carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 10 years. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count One also carries a maximum fine of $10,000,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of at least five years, and up to any number of years, including life.

b. Count Thirteen carries a maximum sentence of life imprisonment, and a statutory mandatory minimum sentence of 5 years. The sentence of imprisonment on Count Thirteen is required to be consecutive to any other sentence imposed. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation on this count. Count Thirteen also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Thirteen, the judge also may impose a term of supervised release of not more than five years.

c.  In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.  Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment, and the minimum sentence is 15 years' imprisonment. In addition, defendant is subject to a total maximum fine of $10,250,000, a period of supervised release, and special assessments totaling $200.

## Sentencing Guidelines Calculations

8.  Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.    **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2016 Guidelines Manual.

b.    **Offense Level Calculations**.

Count One

i.    The government's position is that the base offense level is 32, pursuant to Guideline §§ 2D1.1(a)(5) and 2D1.1(c)(4), because the amount of controlled substances involved in the offense of conviction for which defendant is accountable is at least 15 kilograms of cocaine and 40 kilograms of marijuana. Pursuant to Application Note 8(B) to Guideline § 2D1.1, when determining the offense level for an offense involving different controlled substances, each drug is to be converted to its marijuana equivalent, combined, and then referred to the Drug Quantity Table in § 2D1.1 to obtain the combined offense level. Combining the marijuana equivalents for the cocaine and marijuana for which the defendant is accountable results in approximately 3,040 kilograms of marijuana. Defendant reserves the right to contest the drug amount, and the base offense level, at

sentencing. Each party is free to present evidence and argument to the Court on this issue.

        ii.      Pursuant to Application Note 4 to Guideline § 2K2.4, defendant should not receive a two-level increase in his offense level under Guideline § 2D1.1(b)(1), because his conduct in possessing a firearm in furtherance of the drug trafficking conspiracy is accounted for by the consecutive term of imprisonment that will be imposed on defendant for his conviction under Count Thirteen.

        iii.     The government's position is that, pursuant to Guideline § 2D1.1(b)(12), a two-level enhancement applies because defendant maintained a premises for the purpose of distributing a controlled substance, namely 3130 N. Lake Shore Drive West, Apartment 1904, and 441 West Oakdale Apartment 12E. Defendant reserves the right to contest this enhancement at sentencing. Each party is free to present evidence and argument to the Court on this issue.

        iv.     The government's position is that, pursuant to Guideline § 3B1.1(a), a four-level increase applies because defendant was an organizer and leader in a criminal activity involving five or more participants. Defendant reserves the right to contest this enhancement at sentencing. Each party is free to present evidence and argument to the Court on this issue.

<u>Count Thirteen</u>

        v.     The guideline applicable to the offense of conviction is Guideline § 2K2.4.

vi.     Pursuant to Guideline § 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute, five years, which must be imposed to run consecutively to any other term of imprisonment imposed.

vii.    If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a 2-level reduction in the offense level will be appropriate. The government reserves the right to take whatever position it deems appropriate at the time of sentencing with respect to whether defendant has accepted responsibility within the meaning of Guideline § 3E1.1(a).

c.     If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to § 3E1.1(a), the government will move for an additional 1-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

d.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, the government believes that defendant's criminal history points equal 5 and defendant's criminal history category is III:

i.    On or about June 7, 2002, defendant was convicted of aggravated criminal sexual abuse in the Circuit Court of Cook County, Illinois, and sentenced to 40 months of probation. On or about September 25, 2006, defendant's probation was revoked and he was sentenced to 3 years of imprisonment. Defendant was released on parole for this conviction on November 29, 2007, and remained on parole until November 29, 2009. Pursuant to Guideline §§ 4A1.1(a) and 4A1.2(k)(1), defendant receives 3 criminal history points for this offense.

ii.    The government submits that, pursuant to Guideline § 4A1.1(d), defendant receives 2 additional criminal history points because he committed the instant offense while under a criminal justice sentence, namely, on parole for the above-listed conviction. Defendant reserves the right to argue at sentencing that the offense did not begin until after his parole concluded. Each party is free to present evidence and argument to the Court on this issue.

e.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, it is the government's position that the anticipated offense level is 35, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory

12

sentencing guidelines range of 210 to 262 months' imprisonment on Count One, in addition to any supervised release and fine the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment on Count One and a mandatory consecutive 5-year term of imprisonment on Count Thirteen.

      f.     Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the

Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.  Each party is free to recommend whatever sentence it deems appropriate.

12.  It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.  Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.  After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the superseding indictment, as well as the indictment as to defendant.

## Forfeiture

15.  The superseding indictment alleges that defendant is liable to the United States for approximately $100,000, including specific funds seized on or about

June 20, 2013, which funds are subject to forfeiture because those funds are proceeds of the sale of controlled substances, pursuant to Title 21, United States Code, Section 853. Further, defendant has subjected personal property to forfeiture, namely: a loaded Lorcin Model L22, .22 caliber semi-automatic pistol with a defaced serial number; a loaded Ruger Model P95, 9 mm semi-automatic pistol, bearing serial number 31776419; a loaded Smith & Wesson, .32 caliber revolver with a defaced serial number; a loaded Davis Industries Chino .32 revolver with a defaced serial number; a loaded Smith & Wesson, .40 caliber semi-automatic pistol, bearing serial number PDM8351; and a loaded SCCY Industry Model CPS-1, .380 caliber, bearing serial number 023568, because that property and associated ammunition was involved in the commission of the violation of Title 18, United States Code, Section 924(c)(1)(A) alleged in Count Thirteen of the superseding indictment and was used to commit and facilitate the commission of the offense charged in Count One of the superseding indictment, and are thus subject to forfeiture pursuant to Title 21, United States Code, Section 853. By entry of a guilty plea to Counts One and Thirteen of the superseding indictment, defendant acknowledges that the property identified above is subject to forfeiture.

16.    Defendant agrees to the entry of a forfeiture money judgment, joint and several with his co-defendants, in the amount of $71,555, in that these funds are subject to forfeiture. In addition, prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the

above-described firearms and funds and further agrees to the seizure of this property so that it may be disposed of according to law. Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

17. Defendant further acknowledges that, on or about June 20, 2013, administrative forfeiture proceedings were commenced against certain property, including $5,200 and $23,245 seized on or about June 20, 2013. Defendant received notice of the proceedings, chose not to file a claim, and hereby relinquishes all right, title, and interest he may have in this property. Defendant understands that declarations of forfeiture have been or will be entered, extinguishing any claim he may have had in the seized property.

18. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

19. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture of any property

identified in this agreement subject to forfeiture, and will not assist any third party with regard to such challenge or review.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

20. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 744-1.

21. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

22. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.        The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.       If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.      If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.      At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

viii.      With respect to forfeiture, defendant understands that if the case were tried before a jury, he would have a right to retain the jury to determine whether the government had established the requisite nexus between defendant's offense and any specific property alleged to be subject to forfeiture.

b.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

23.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

24.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

25.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

26.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

27.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

28.    Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

29.    Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

30. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

31. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

32. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

33.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _2-27 + 2017_


By _Ronald Wlenley_

ZACHARY T. FARDON
United States Attorney

DANIEL VAZQUEZ
Defendant

SCOTT M. EDENFIELD
Assistant U.S. Attorney

SCOTT FRANKEL
Attorney for Defendant