UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13 CR 744-1 |
| v. | ) | |
| | ) | |
| DANIEL VAZQUEZ | ) | Judge Gary Scott Feinerman |

**Government's Sentencing Memorandum**

For at least five years, defendant led a successful narcotics trafficking operation. Undeterred by prior convictions for violent crimes, he instructed his workers to carry firearms with them to be ready to protect drugs and proceeds of drug sales. Assuming that he continues to accept responsibility for his actions, the Court should sentence defendant to a term of imprisonment at or near 270 months.

I. **Background**

In 2008, defendant asked co-defendant Anwer Shahbaz to provide money to start a marijuana trafficking operation. (PSR ¶ 15.) Shahbaz agreed, and the two began purchasing and reselling marijuana. (*Id.*) Defendant and Shahbaz later began to traffic cocaine, as well. (*Id.* ¶ 19.) Initially, Vazquez purchase an ounce or two of cocaine at a time for resale.

(*Id.*) But during the period during which the government was intercepting calls, Vazquez' organization was *distributing* half kilograms of cocaine.

Vazquez ran the organization like a business. The organization maintained an "office," renting apartments for the sole purpose of drug trafficking operations. At that office, the organization stored and repackaged drugs and maintained records, including ledgers for profits, debts, and inventory. The office also acted as a distribution center: employees received orders from customers and wrote those orders on dry erase boards. When enough orders were received, a driver was dispatched to deliver drugs, or pick up proceeds. The organization paid drivers, like co-defendant Francisco Mireles, a salary for their efforts.

Though Vazquez ran his organization like a food delivery service, the organization's wares remained illegal. Vazquez outfitted delivery vehicles with hidden compartments to protect drugs and proceeds. Those compartments were not simply additional gloveboxes; opening these hidden compartments required a multi-step sequence of actions. (Govt's Version Ex. A at 8–9.) Vazquez also directed his employees to keep guns with them, to further protect drugs and cash.

In his presentence interview, Vazquez acknowledged that he had been a member of the Latin Kings between the ages of 13 and 17. At some point, Vazquez became paranoid that members of the Maniac Latin Disciples were

trying to steal narcotics from his organization. (*Id.* at 6.) Defendant then ensured that his employees carried guns with them for protection. (*Id.*) In an April 1, 2013, call (560), defendant told Shahbaz, speaking about rival gang members, "We gotta air them b***s out man, that's it. Air them n***s out every time we see them." Two days later, in an April 3, 2013, call (794), defendant told someone, "I still got a lot of guns." In a call later that day (800), defendant stated, referencing rival gangs again, "I'll come up shooting. I ain't really cutting n***s up, right now. You know. I'll shoot a n***, though." Then on an April 4, 2013, call, defendant was heard racking a semi-automatic handgun while waiting for someone to answer a call (1174). During the call, defendant stated, "I'm strapping up right now." At the time of the arrests in this case, officers seized six handguns, five of which were loaded.

      The organization distributed a significant amount of narcotics. At his change of plea, Anwer Shahbaz acknowledged that the conspiracy trafficked at least 40 kilograms of marijuana and 15 kilograms of cocaine from 2008 through 2013. A DEA analysis of six months of ledgers determined that, during that six-month period, the organization trafficked at least 4.5 kilograms of cocaine and 29.9 kilograms of marijuana.

## II. Guidelines calculations

The United States agrees with the calculations set forth in the Report. Assuming he continues to qualify for a reduction for acceptance of responsibility, defendant's final offense level is 35 and his criminal history category is IV, resulting in a guideline range of 235 to 293 months on Count One, to be followed by a consecutive 60-month sentence on Count Thirteen, for a total guideline range of 295 to 353 months.

## III. Sentencing recommendation

### A. Term of imprisonment

The United States requests that the Court sentence to a term of imprisonment at or near 270 months, assuming that he continues to accept responsibility for his actions. As set forth below, such a sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

The offense was an extremely serious one. It was not a one-time lapse in judgment, but a conspiracy to traffic narcotics that spanned at least five years. Defendant's narcotics trafficking was relatively sophisticated: hiring employees, maintaining apartments specifically for the purpose of drug trafficking, installing hidden compartments in cars, and keeping books to record sales, debts, and inventory.

Drug trafficking itself causes significant harm to the community. But violence is concomitant with drug dealing. The seizure of six handguns and defendant's intercepted statements about violence make clear that the organization was armed to the teeth, and defendant was ready and willing to shoot anyone who challenged the organization. Armed men, willing and ready to commit violent acts to protect their illegal enterprise, pose a grave danger to the public and make the offense extremely serious.

Defendant's criminal history also counsels in favor of a significant sentence. As a juvenile, he was convicted of two violent crimes: robbery and armed robbery. (Report ¶¶ 53–54.) As an adult, he was convicted of two more violent crimes: aggravated battery and aggravated criminal sexual abuse. (*Id.* ¶¶ 57–58.) In both of his adult cases, defendant received a term of probation. In both instances, he committed another crime while on probation; his previous convictions did nothing to deter him from further crime.

The need to avoid unwarranted sentencing disparities also supports the requested sentence. The Court sentenced Angel Perez, a driver for the group, to 124 months.[1] Francisco Mireles, also a driver, pled guilty to a cooperation plea agreement that calls for a sentence of 119 months. Anwer Shahbaz, the operation's bookkeeper, cooperated, pled guilty to a cooperation plea

---

[1] While Perez pled guilty to conspiracy to distribute 500 grams or more of cocaine, the remaining defendants pled guilty to conspiracy to distribute 5 kilograms or more of cocaine.

5

agreement that calls for a sentence of 135 months. A 270-month sentence will account for Vazquez' more significant culpability and insure that Mireles and Shahbaz are credited for cooperation.

Vazquez' prior criminal history, his readiness to commit acts of violence, his leadership of the enterprise, and his extensive narcotics trafficking all argue in favor of a significant sentence. The government requests a sentence below the guidelines, however, for two reasons. First, defendant received two criminal history points because he began drug trafficking before he was discharged from probation in his 2002 case. (Report ¶¶ 58, 62.) As a result, defendant moved from criminal history category III to IV. The two points were correctly applied, but defendant initially began trafficking marijuana, later transitioning to cocaine trafficking, the primary driver of his sentence. The government thus submits that the two criminal history points somewhat overstate his criminal history.

Second, though he has seven criminal history points, defendant's longest prior sentence is a 3-year term, which was ordered after he violated his probation. Thus, the Court's sentence in this case will be the longest prison term defendant has received. The requested 270-month sentence is reasonable, however, given the severity of defendants conduct and the fact that his prior juvenile and adult convictions did nothing to deter him from committing future crimes.

B.  **Fine**

The government agrees with the Report that no fine should be imposed, especially in light of the agreed $100,000 forfeiture judgment.

C.  **Supervised Release**

The United States submits that, with certain exceptions detailed below, the conditions of supervised release set forth in the Report should be entered in order to protect the public from further crimes to assist the probation officer in the supervision of the defendant, and to provide the defendant with needed medical care.

The Report proposes several conditions that relate to defendant's 2002 sexual abuse conviction. In *United States v. Johnson*, 756 F.3d 532, (7th Cir. 2014), the Seventh Circuit cautioned that conditions related to prior sex crimes, rather than the offense of conviction, should be entered only where there was a temporal or other connection between the offense of conviction and the prior crime. No such connection exists here. Defendant was convicted of aggravated sexual abuse in 2002 and this case has nothing to do with a sex crime. Accordingly, the United States recommends that the Court not order sex offender treatment (Special Condition 9, including its subparts) or that the defendant refrain from living in specified places. (discretionary condition 13). Defendant should remain subject to the mandatory condition that he not

commit a state or local crime, which will require him to follow all legal restrictions arising from his 2002 conviction.

## IV. Conclusion

For the reasons set forth above, the United States requests that the Court sentence defendant to a term of imprisonment of 270 months, followed by a 5-year term of supervised release with the requested conditions.

    Respectfully submitted,

    JOEL R. LEVIN
    Acting United States Attorney

By: s/ *Scott M. Edenfield*
    Scott M. Edenfield
    Assistant United States Attorney
    219 South Dearborn Street
    Chicago, Illinois 60604