UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 13 CR 744-1 |
| v. | ) | |
| | ) | |
| DANIEL VAZQUEZ | ) | Judge Gary Scott Feinerman |

### **Response to Daniel Vazquez' Objections to the PSR**

The three objections defendant raised in his objections to the Presentence Investigation Report are without merit. The Court should adopt the findings in the Report.

In his challenges to the Report, defendant adduces no evidence of his own, instead denying facts contained in the Report and challenging conclusions drawn from those facts. But "[a] court may accept the facts in a PSI as true, unless the defendant produces some evidence, more than mere denials, questioning the PSI's accuracy." *United States v. McIntosh*, 198 F.3d 995, 1003 (7th Cir. 2000). Thus, to challenge the facts contained in the Report at sentencing, defendant must adduce evidence that would bring their accuracy into question. Should defendant elect to do so, the United States anticipates introducing testimony and evidence at sentencing to establish the contested enhancements.

## I. The Report properly applied the enhancement for maintaining a premises for the purpose of distributing controlled substances.

In his sentencing memorandum, defendant objects to the 2-level stash house enhancement pursuant to USSG § 2D1.1(b)(12). Defendant argues that Anwer Shahbaz—not defendant—maintained the stash houses. Mem. at 2. This acknowledgement all but admits that the stash house enhancement should apply.

A defendant is responsible for "all acts and omissions committed, aided, abetted, counseled, [and] commanded . . . by the defendant" as well as, in the case of a jointly undertaken criminal activity, acts and omissions of others that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of the criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." USSG § 1B1.3. In his plea agreement, defendant acknowledged both aiding the acquisition of a stash house and Shahbaz' maintenance of stash houses. In addition, though not acknowledged in the plea agreement, the apartments were acquired at defendant's direction.

In his plea agreement, defendant acknowledged the following pertaining to stash houses:

> VAZQUEZ and Shahbaz were concerned about being robbed of their narcotics by gang members and so they frequently moved the DTO's locations for storing narcotics. VAZQUEZ knew that Shahbaz rented apartments for the DTO to use to store

drugs, money, and firearms. For instance, in 2013, Shahbaz located and rented the apartment at 3130 N. Lake Shore Drive West, Apt. 1904, Chicago, Illinois.

In June 2013, when the lease on the 3130 N. Lake Shore Drive West apartment was set to expire, VAZQUEZ and Shahbaz rented another apartment at 441 West Oakdale Apartment 12E, Chicago, Illinois. The DTO members were in the process of moving their operations to the new location, and had moved several items, when they were arrested on June 20, 2013.

Plea Agreement at 4.

Assuming, for the sake of argument, that Shahbaz acted without direction from defendant, the enhancement would nevertheless be appropriate. As the Seventh Circuit held in *United States v. Acosta*, 534 F.3d 574 (7th Cir. 2008), renting an apartment for the purpose of storing narcotics qualified for the enhancement. 534 F.3d at 591; *see also United States v. Sanchez*, 810 F.3d 494, 496–97 (7th Cir. 2016) (affirming enhancement where home was used to store narcotics); USSG § 2D1.1, comment. (n. 17) (noting that circumstances where enhancement applies "include[e] *storage* of a controlled substance for the purpose of distribution" (emphasis added)). In his plea agreement, defendant acknowledged that Shahbaz "rented apartments for the DTO to use to store drugs, money, and firearms." Plea Agreement at 2. Renting an apartment for the purpose of storing drugs was within the scope of the narcotics conspiracy and undertaken in furtherance of the conspiracy. Not only was the renting of apartments reasonably foreseeable to

defendant, defendant admitted actual knowledge. *Id.* In addition, defendant admitted that he and Shahbaz rented, and were in the process of moving operations to, an apartment on West Oakdale and (b) that he and Shahbaz frequently moved the organization's location for storing narcotics because they were afraid of being robbed. *Id.* These facts alone establish that the stash house enhancement should be applied.

The grand jury statements of Mireles and Shahbaz provide further bases for the enhancement. Mireles testified that, at the beginning of 2012, the organization moved their stash house from Diversey and Sheridan, where Vazquez and Shahbaz were living, to Ninth and State. Mireles Stmt. at 7. Mireles further testified that the group again moved the stash house, which they referred to as an "office," to an apartment on North Lake Shore Drive in 2013. *Id.* at 8. Shahbaz testified that he found the Lake Shore Drive "office" at Vazquez' request, after Vazquez stated that he did not like to have his narcotics business located where he was living. Shahbaz Stmt. at 4. Shahbaz testified that the group moved a safe, drugs, money, and scales into the office in February 2013. *Id.*

Searches of the Lake Shore Drive apartment and the West Oakdale apartment confirmed that the apartments were used for the purposes of storing narcotics to be distributed. From the Lake Shore apartment, officers recovered two scales, packaging materials, a money counter, three ledgers, a

4

dry erase board used to track drugs and money, almost 600 grams of cocaine, and over 14 kilograms of marijuana. From the West Oakdale apartment, officers recovered two guns, packaging materials, a scale, more ledgers, and over 100 grams of marijuana.

At a minimum, Shahbaz, one of Vazquez' co-conspirators, obtained apartments for use as stash houses, and the drug trafficking organization used those houses to store and distribute narcotics. Those actions were within the scope of, and committed in furtherance of, the jointly undertaken criminal activity. They were also reasonably foreseeable to defendant. The Report appropriately applied the stash house enhancement.

## II. The Report properly included a 4-level leadership enhancement.
### A. The conspiracy involved five or more participants.

Vazquez acknowledges that the four people charged in the indictment were part of the conspiracy. Memo. at 6. Thus, if even one more individual was involved in the conspiracy, there were at least five participants.

Mireles testified that when Vazquez offered him a job driving for the conspiracy, Vazquez said that he had fired his cousin "Diko" from the job after Diko stole marijuana. Mireles Stmt. at 2. Mireles also stated that Vazquez hired Neftali Freytes as an enforcer. *Id.* at 6. Shahbaz, likewise, testified that Vazquez hired two of his cousins as drivers when Mireles was in

5

jail. Shahbaz 2d Stmt. at 5. Thus, there were five or more participants in the conspiracy.

### B. Vazquez was the leader of the conspiracy.

Intercepted calls, as well as the grand jury testimony of Francisco Mireles and Anwer Shahbaz, make clear Vazquez' role in the conspiracy. Certain calls intercepted involving Daniel Vazquez are set forth in the criminal complaint in which he was initially charged, *U.S. v. Whiting et al.*, 13 CR 512. The portion of the complaint setting for those calls is attached as Exhibit A. Those calls establish that Vazquez acted as a leader. Vazquez, not others, dealt with suppliers. *See, e.g.* Compl. ¶¶ 292, 360. He set prices, *see, e.g., id.* ¶¶ 246 and 296(a), 296(b), 319, extolled the quality of the cocaine sold, *see, e.g., id.* ¶ 294, and discussed whether the organization would send more cocaine before previous debts had been paid, *see, e.g., id.* ¶ 382. While Vazquez performed these managerial activities, he dispatched others to perform concrete tasks, such as picking up money, *see, e.g., id.* ¶ 313, or drugs, *see, e.g., id.* ¶ 305–08.

In addition to the recorded calls, Mireles testified to the grand jury that Vazquez paid him a salary to be a driver. Mireles Stmt. at 2. Though Mireles testified that Shahbaz and Vazquez seemed like partners, Mireles testified that Vazquez gave him directions. *Id.* at 3.

6

## III. The conspiracy began before Vazquez' parole was completed.

Vazquez' parole ended on November 29, 2009. Report ¶ 58. Though he initially reported that the conspiracy began in 2011, Shabaz Stmt. at 2, Shahbaz later testified that he and Vazquez, in fact, began selling marijuana in 2008. Shahbaz 2d Stmt. at 1–2. Shahbaz' second statement is corroborated by the statement of Francisco Mireles.

Mireles testified that, in the summer of 2009, Shahbaz showed him a large quantity of marijuana. Mireles Stmt. at 2. Shahbaz also told Mireles that Shahbaz and Vazquez were selling marijuana. *Id*. Mireles further testified that he began working for the organization as a driver at the end of 2009, in order to repay a debt from marijuana Shahbaz and Vazquez had fronted to Mireles. *Id*. The testimony of Shahbaz and Mireles establishes that Vazquez' participation in the conspiracy began prior to November 29, 2009.

## IV. Acceptance of responsibility

Defendant has challenged facts contained in the Report, including when his criminal conduct began, whether he was involved in the use of stash houses, and whether there were five or more people involved in the offense. The Seventh Circuit has approved denial acceptance of responsibility where a defendant denies or seeks to minimize his role on the offense. *See, e.g.*, *United States v. Fiore*, 178 F.3d 917, 925–26 (7th Cir. 1999). Should defendant

7

persist in his challenges to facts contained in the Report, he should not receive a reduction for acceptance of responsibility.

Respectfully submitted,

JOEL R. LEVIN
Acting United States Attorney

By: s/ *Scott M. Edenfield*
Scott M. Edenfield
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604